UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MELISSA WIGFALL,
CONNIE DANIELS,
GENETHEL DANIELLE PYE,
ANTHONY MILLS,
MALISA BUTLER,
VIRGINIA LARRY, and
MELISSA WORLEY,

    Plaintiffs,

v.                                            Case No.: 8:10-CV-02232-T-24-TGW

SAINT LEO UNIVERSITY, INCORPORATED,

    Defendant.
_____/

## ORDER

        This cause comes before the Court on a motion for summary judgment filed by Defendant Saint Leo University, Incorporated, ("Saint Leo"), and a response in opposition to the motion, filed by Plaintiffs Melissa Wigfall, Connie Daniels, Genethel Danielle Pye, Anthony Mills, Malisa Butler, Virginia Larry, and Melissa Worley. (Dkts. 64, 77, 78, 79, 80, 81, 82, 84, 85, 86, 88, 89, 90, 91.) With the Court's permission, Saint Leo filed a reply, and Plaintiffs filed a sur-reply. (Dkts. 95, 98.)

        Plaintiffs allege that Saint Leo terminated their employment in retaliation for their participation in an earlier lawsuit against Sodexo, Inc., (hereinafter, "the *Sodexo* Lawsuit"). They assert that this retaliatory termination violated the Florida Whistleblower Act, the Florida Civil Rights Act, the Fair Labor Standards Act, Section 1981, and Title VII. As explained below, the undisputed evidence shows that Plaintiffs cannot prevail on their claim as a matter of law, and therefore, Saint Leo's motion must be granted.

I.   **Background and Facts**

The following material facts are undisputed in the record:

A.   **Plaintiffs' Employment as Food Service Workers**

Saint Leo formerly had a contract with Sodexo, Inc. ("Sodexo"), whereby Sodexo would provide food services on the Saint Leo campus. Plaintiffs were food service workers on the Saint Leo campus under the contract between Saint Leo and Sodexo. Plaintiffs' employment began when they filled out a Sodexo employment application and were hired by Sodexo personnel.

Plaintiffs concede that they were "supervised, directed, evaluated, and subject to discipline by Sodexo's personnel." (Pls.' Opposition Memo. at 2, n.1.) Plaintiffs testified that they received a Sodexo Employment Manual, which contained Sodexo policies and procedures. Such manual governed their conduct. Plaintiffs admit that their pay and their schedules were determined by Sodexo. They further admit that they were assigned duties and supervised by Sodexo personnel.

Plaintiffs furthermore concede that "Sodexo processed their payroll and disbursed their payroll, and provided employee benefits to [them]." (Pls.' Opposition Memo. at 2, n.1.) In particular, Plaintiffs testified that their paychecks came from Sodexo, that their W-2s and payroll came from Sodexo, and that Sodexo withheld payroll taxes. Vacation, sick pay, health, and other employment benefits came from Sodexo.

Decisions regarding day-to-day operations, employment files, and the terms and conditions of employment at Saint Leo were made by Sodexo's District Manager, Rodney Cruise, and Sodexo HR Manager, Tricia Crowley. Position descriptions and performance rating

2

documents for food service workers were authored by Sodexo on Sodexo forms and utilized by Sodexo personnel.

In her sworn declaration, Sodexo's Vice President of Human Resources, Kysa Minnifield, confirmed that Plaintiffs were solely employed by Sodexo, that they were not jointly employed with Saint Leo, and that Sodexo alone made the determination to terminate Plaintiffs' employment. (Minnifield Decl. at ¶¶ 5-11.) According to Minnifield, Saint Leo did not retain for itself control over the terms and conditions of the employment of Sodexo employees, including Plaintiffs. Furthermore, Saint Leo did not have any control over Sodexo's hiring or firing of the food service employees, including Plaintiffs; did not pay any of the plaintiffs in this case; did not pay Social Security taxes or insurance for Plaintiffs; and did not pay operating expenses for Sodexo, for which Sodexo was responsible under the contract between Sodexo and Saint Leo.

### B. Plaintiffs' Lawsuit Against Sodexo

On February 4, 2010, Plaintiffs and several others filed the *Sodexo* Lawsuit against Sodexo, Rich Vogel, who managed the Saint Leo account for Sodexo, and another Sodexo manager, Vickie Beavins. In that suit, Plaintiffs asserted claims for race discrimination and retaliation, unpaid overtime wages, and battery. Saint Leo was not named as a defendant in the *Sodexo* Lawsuit.

Plaintiffs' claims in the *Sodexo* Lawsuit were settled as a result of a confidential mediation that took place on June 17, 2010. Pursuant to the settlement, Sodexo agreed to change certain working conditions of the plaintiffs, one of which was removal of Vogel as manager of the Saint Leo account. Saint Leo did not participate in the mediation, and Sodexo did not confer

with Saint Leo before agreeing to the terms of the settlement, including Vogel's removal.

      **C.**      **Saint Leo's Termination of Contract with Sodexo**

On or about June 24, 2010, Saint Leo learned that Sodexo planned to transfer Vogel off the Saint Leo campus. Even though Vogel was an employee of Sodexo–not Saint Leo–the students did not know that, and they thought so highly of Vogel that they voted him employee of the year for two of the past three years. Because of the students' positive opinion of Vogel, Saint Leo wanted to keep Vogel on campus, and Saint Leo believed that the only way to do so was to cancel its contract with Sodexo. Furthermore, Saint Leo was unhappy with Sodexo's lack of communication regarding the *Sodexo* Lawsuit and was troubled by Sodexo keeping Saint Leo "totally in the dark."

Because Saint Leo was unhappy with Sodexo's communication about the *Sodexo* Lawsuit, Saint Leo started looking into the costs of using Sodexo to provide food services. Saint Leo estimated that there would be approximately $400,000 in savings by not having Sodexo provide food services. These estimated savings were the result of lower food cost, avoiding the 8% profit that was paid to Sodexo under the contract, and the commissions that Saint Leo would earn instead of paying to Sodexo.

Saint Leo therefore decided to terminate its contract with Sodexo and to hire Vogel as a Saint Leo employee in the role of Director of Dining Services. On July 30, 2010, Saint Leo notified Sodexo that it was terminating Sodexo's contract, and that going forward, Saint Leo would handle food services in-house.

      **C.**      **Sodexo's Termination of Food Service Workers at Saint Leo Campus**

On August 3, 2010, Sodexo sent to its food service workers at the Saint Leo campus,

including Plaintiffs, a letter stating that because of the cancellation of the contract, Sodexo would "no longer be able to employ [them] at Saint Leo" after the transition. (Minnifield Decl. at Ex. I.) In addition, the Sodexo employees, including Plaintiffs, were notified in the letter that they could apply for employment at Saint Leo by contacting the Saint Leo Human Resources Department.

On September 13, 2010, Sodexo issued its food service workers at the Saint Leo campus, including Plaintiffs, a WARN Act notice advising that, effective October 1, 2010, Sodexo would no longer be providing food services for Saint Leo, that it would close its operation at Saint Leo, and that their employment would be discontinued. Sodexo also issued an Account Closure document, which identified that its food service workers, including Plaintiffs, were being separated from Sodexo on a job elimination/lay-off status, which meant that they were no longer employed with Sodexo.

On October 1, 2010, Saint Leo officially terminated its contract with Sodexo. All Sodexo food service workers, including Plaintiffs, were terminated at that time. Thereafter, the plaintiffs who filed for unemployment were paid unemployment benefits, which were charged to Sodexo–not Saint Leo.

### D. Plaintiffs' Lawsuit Against Saint Leo

On October 5, 2010, Plaintiffs filed the instant case, alleging discrimination and retaliation under Section 1981, the Florida Whistleblower Statute, and the Fair Labor Standards Act. Plaintiffs initially named Sodexo, Saint Leo, and Rich Vogel as defendants, but later filed a First Amended Complaint dropping Sodexo and Rich Vogel as defendants. Following the Court's Orders of October 18, 2011 on Saint Leo's Motion for Judgment on the Pleadings and on

5

Saint Leo's Motion to Consolidate, Plaintiffs filed their Second Amended Complaint, in which they asserted a singular claim that Saint Leo terminated their employment in retaliation for their participation in the *Sodexo* Lawsuit. (Dkts. 38, 39, 46.)

Plaintiffs have alleged one claim against Saint Leo–that on or about October 1, 2010, Saint Leo wrongfully terminated their employment in retaliation for their participation in the *Sodexo* Lawsuit. They allege that they participated in the *Sodexo* Lawsuit, that Saint Leo was aware of their participation, and that Saint Leo retaliated against them for their participation by terminating their employment. They assert that this retaliatory termination violated the Florida Whistleblower Statute, the Florida Civil Rights Act, the Fair Labor Standards Act, Section 1981, and Title VII.

On December 13, 2011, the Court ruled that Plaintiffs would be judicially estopped from asserting any claim other than their retaliatory termination claim. (Dkt. 60.) The Court made this ruling after assurances from Plaintiffs that they were not attempting to allege an additional *failure to hire claim*, despite the fact that their Second Amended Complaint contained allegations that Saint Leo required them to re-apply for employment after the cancellation of the Sodexo contract, and that the application and rehire process were casually related to their participation in the *Sodexo* Lawsuit. Plaintiffs represented to the Court that such facts merely served to demonstrate that Sodexo and Saint Leo shared control over certain aspects of Plaintiffs' employment, and therefore, supported their contention that Saint Leo was a joint employer. Plaintiffs nevertheless confirmed their position that they were offering no other basis for their retaliation claim other than their alleged wrongful termination.

### E. Plaintiffs' Evidence of Retaliation

In support of their opposition to Saint Leo's summary judgment motion, Plaintiffs flooded the Court with an enormous number of documents. Most of these documents are irrelevant to the question at hand, namely whether there is a genuine issue of material fact concerning Plaintiffs' retaliatory termination claim.[1] Nevertheless, the Court has satisfied its duty to examine the entire record to determine whether a factual issue remains for trial. In doing so, the Court has discerned the following additional facts from Plaintiffs' depositions, as well as from other documents, which are relevant and which the Court views in the light most favorable to Plaintiffs:

While working in food services, pursuant to the Sodexo Handbook, Plaintiffs were required to wear a uniform and an ID badge. That ID badge identified Plaintiffs as Saint Leo "employees." Furthermore, Plaintiffs were required to attend an annual orientation that was held for Saint Leo's faculty and staff, during which the President of the University addressed them. Additionally, some of the plaintiffs testified that they received a wage increase that they were told came directly from Saint Leo. Some of the plaintiffs also testified that they received instructions directly from Saint Leo officials concerning dining services and catering events on campus. Plaintiff Mills testified that the president of Saint Leo told him that "if Sodexo ever

---

[1] For example, Plaintiffs filed copies of affidavits of service of process, subpoenas, correspondence between counsel, and other discovery-related documents that serve no purpose but to inundate the Court with useless information. (Dkt. 77, Ex. 4.) Plaintiffs also filed, for example, the affidavit of non-party A.J. Edmonds. (Dkt. 80.) This affidavit primarily concerns the process by which Edmonds was interviewed and hired by Saint Leo to work in food services in August of 2011. The Court presumes that this affidavit was filed to illustrate discrepancies in the manner in which Saint Leo hired food services workers after it began handling food services in-house. It is irrelevant because Plaintiffs have not asserted–and, in fact, are judicially estopped from asserting–a failure to hire claim.

goes away," Mills would "always have a job at Saint Leo." (Mills depo. at 103.) Mills also stated in his declaration that the president "personally stopped Sodexo from transferring [him] to another Sodexo account." (Mills decl. at ¶ 4.)

Also in support of their opposition to Saint Leo's summary judgment motion, Plaintiffs introduced purported evidence in the form of charts authored by their counsel, titled "Inconsistencies in Interview and Continuation Process" and "Sample of Inconsistencies in Background Check Process." (Dkt. 77, Exs. B, C.) The Court presumes that these charts were filed in an attempt to show alleged inconsistencies in interviews and background checks conducted by Saint Leo during its process of hiring in-house food service employees.

Putting aside the fact that these charts are not evidence, but rather, qualify as inadmissible hearsay offered for the truth of the matter asserted, *see* Fed. R. Evid. 802, they are irrelevant. As stated previously, Plaintiffs are judicially estopped from asserting a failure to hire claim. The adverse employment action that forms the basis of Plaintiffs' claim is their termination in October of 2010. Purported inconsistencies in the process by which Saint Leo interviewed and hired in-house food service employees *after* it terminated its contract with Sodexo, and *after* Plaintiffs were terminated in October of 2010 by Sodexo, are beyond the scope of this case. Moreover, Plaintiffs have not explained, and the Court cannot speculate, how these charts show that Saint Leo and Sodexo were joint employers of Plaintiffs.

Together with these charts, Plaintiffs also filed a request that the Court take judicial notice of public records from various Florida state courts and from a state court in Maryland. (Dkt. 78.) These appear to be criminal records of various non-parties that Plaintiffs' counsel printed from the state courts' websites. Plaintiffs did not explain why these records were filed.

8

The Court can only speculate that they were filed to illustrate discrepancies in Saint Leo's hiring process–perhaps that these non-parties who have criminal histories were hired by Saint Leo to work in-house, when Plaintiffs were not hired. Nevertheless, the documents are irrelevant because Plaintiffs have not asserted a failure to hire claim. The Court therefore declines to take judicial notice of the records because Plaintiffs did not supply the Court with the necessary information to discern their relevance, and because there is no failure to hire claim before the Court. Fed. R. Evid. 201(c) (stating that the Court "must take judicial notice if a party requests it *and the court is supplied with the necessary information*") (emphasis added).

Finally, Plaintiffs request that the Court take judicial notice of documents they received from the National Labor Relations Board ("NLRB") in response to their request for records under the Freedom of Information Act. (Dkt. 79.) Federal Rule of Evidence 201(b) provides that the Court may take judicial notice of a fact that "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

These records are not documents generated by the NLRB. Instead, they are documents generated by Saint Leo and by Sodexo, which appear to have been sent to the NLRB as a part of its investigation, such as letters written by Saint Leo's counsel and Sodexo's counsel to the NLRB. These documents were not authored or authenticated by the NLRB, or by any government agency, and are not self-authenticating simply because the NLRB received them and kept them in its files. Additionally, there appears to be nothing in the records that raises a factual issue concerning Plaintiffs' retaliatory termination claim. The Court therefore declines to take judicial notice of them.

## II. Standard of Review

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.*

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Id.* In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## III. Discussion

Plaintiffs allege that Saint Leo terminated their employment in retaliation for their participation in the *Sodexo* Lawsuit. Saint Leo contends that it is entitled to summary judgment on this claim because: (1) Saint Leo was not Plaintiffs' employer; (2) Sodexo–not Saint Leo–terminated Plaintiffs; and (3) even if Plaintiffs were able to show both that they were employed by Saint Leo and that Saint Leo took an adverse employment action against them, Saint Leo had legitimate, non-retaliatory business reasons for terminating its contract with Sodexo that Plaintiffs cannot prove were pretextual.

### A. Saint Leo Was Not an Employer of Plaintiffs and Did Not Terminate Plaintiffs.

Saint Leo first contends that Plaintiffs' retaliatory termination claim fails as a matter of law because Sodexo–not Saint Leo–employed Plaintiffs. It argues that it did not have control over Plaintiffs, and cannot be deemed to be a joint employer of Plaintiffs. Because Plaintiffs were never employed by, or terminated by, Saint Leo, it follows that, as a matter of law, Saint Leo cannot be liable for retaliatory termination. The Court agrees.

To determine whether a joint employment relationship exists, the Court must consider whether, while contracting with a third party, the putative "joint employer" retained for itself sufficient control over the terms and conditions of the plaintiff's employment. *Morrison v. Magic Carpet Aviation*, 383 F.3d 1253, 1255-58 (11th Cir. 2004). In *Morrison*, the plaintiff was a pilot employed by Magic Carpet Aviation. *Id.* at 1254. The defendant, RDV Sports, Inc. ("RDV"), was the owner of Orlando Magic, Ltd., who contracted with Magic Carpet Aviation to fly players and staff around the country. *Id.* When the plaintiff was terminated, he sued Magic Carpet Aviation and RDV, arguing that RDV was an employer, an "integrated employer," or a "joint employer." *Id.*

In holding that RDV was merely a *client* or *customer* of Magic Carpet Aviation, the Eleventh Circuit recognized that, although RDV provided the plaintiff with gifts, discounts, and invitations to events, that did not mean that RDV had control over the plaintiff. *Id.* at 1256. Furthermore, even though the plaintiff was required to wear RDV's identification badge and apparel, this failed to show that RDV had any control over the plaintiff beyond the "indirect control over a service provider's employees that a customer may obtain by contracting with that

service provider." *Id.* "Such indirect control does not amount to an employment relationship because the customer [RDV] is in privity of contract with the service provider [Magic Carpet Aviation] . . . , and not the service provider's employees." *Id.* Significantly, while RDV, as a major client of Magic Carpet Aviation, could exert influence over the employer's employment decisions, RDV did not actually have the power to hire and fire individuals directly. *Id.* at 1255. Therefore, the Eleventh Circuit concluded that the client, RDV, was not the plaintiff's employer.

Here, Plaintiffs "concede" that "they were supervised, directed, evaluated, and subject to discipline by Sodexo's personnel; and that Sodexo processed their payroll and disbursed their payroll, and provided employee benefits to Plaintiffs." (Pls.' Opposition Memo. at 2, n.1.) This concession alone refutes their assertion that Saint Leo was a joint employer. Nothing in the record shows that Saint Leo exercised the necessary control over Sodexo's employees to be deemed a joint employer. Saint Leo did not control the hiring and firing of the food service workers, did not pay them, and did not direct, supervise, or discipline them.

Of particular significance is the fact that Saint Leo had no control over the employment decision that forms the basis of this lawsuit—the termination of Plaintiffs by Sodexo. The undisputed record shows that Sodexo–not Saint Leo–terminated them. Saint Leo only terminated its contract with Sodexo. Nothing in the record indicates that Sodexo was required to terminate Plaintiffs' employment, once Saint Leo terminated its contract with Sodexo. Presumably, Sodexo could have continued to employ Plaintiffs at another location.

To the extent that Plaintiffs contend that Saint Leo was a joint employer because they were required to wear a uniform and an ID badge that identified them as Saint Leo "employees," such evidence is insufficient to establish that Saint Leo was a joint employer. As in *Morrison*,

Saint Leo contracted with its service provider, Sodexo, and Sodexo, in turn, compelled its employees to wear certain identification badges and uniforms so that Sodexo could satisfy its obligations to Saint Leo. Thus, as in *Morrison*, the fact that Sodexo compelled its employees to adhere to certain rules so that Sodexo could fulfill its contract with Saint Leo does not make Saint Leo a joint employer. Instead, these facts show only that Sodexo imposed certain requirements on its employees to ensure compliance with its contract. Furthermore, the facts that Plaintiffs were required to attend an annual orientation at Saint Leo, and that they received instructions directly from Saint Leo officials concerning dining services, are insufficient to establish Saint Leo as a joint employer. As in *Morrison*, these facts merely show that Saint Leo had some "indirect control over [Sodexo's] employees that [Saint Leo] obtained by contracting with [Sodexo]." 383 F.3d at 1256.

Having admitted that Sodexo–not Saint Leo–controlled the terms and conditions of their employment, Plaintiffs attempt to show that Saint Leo was a joint employer by mis-characterizing testimony and by asserting self-serving statements concerning their subjective beliefs that they were employed by Saint Leo. Plaintiffs may have believed that Saint Leo was their employer, but the record shows that Sodexo–not Saint Leo–controlled their employment. Accordingly, because Saint Leo lacked authority over the terms and conditions of Plaintiffs' employment, particularly the decision to terminate them when the Sodexo contract was terminated, Saint Leo was not a joint employer, and Plaintiffs' retaliatory termination claim fails as a matter of law.

B.	**Plaintiffs Cannot Establish a Prima Facie Case of Retaliation.**

Saint Leo next argues that even if it were a joint employer, Plaintiffs' retaliatory termination claim still fails because Plaintiffs cannot establish a prima face case of retaliation, and because Saint Leo terminated its contract with Sodexo for legitimate business reasons that Plaintiffs cannot show were pretextual.

To establish a prima facie case of retaliation, Plaintiffs must show that: (1) they engaged in a protected activity; (2) they suffered an adverse employment action; and (3) there is a causal connection between the two. *Collado v. United Parcel Serv. Co.*, 419 F.3d 1143, 1158 (11th Cir. 2005). Saint Leo contends that Plaintiffs cannot show an adverse employment action by Saint Leo, and have failed to demonstrate a causal relationship between the purported adverse action and their participation in the *Sodexo* Lawsuit. The Court agrees.

Plaintiffs allege that Saint Leo terminated their employment as a result of their lawsuit against Sodexo. However, as stated previously, there is no evidence that Saint Leo terminated Plaintiffs' employment. Rather, the record reflects that Sodexo terminated Plaintiffs' employment when it received notice that Saint Leo had terminated Sodexo's contract. Thus, there is simply no adverse employment action by Saint Leo against Plaintiffs. Furthermore, Saint Leo's termination of the Sodexo contract does not constitute an adverse employment action because it was not an action by Plaintiffs' employer. *See* 42 U.S.C. § 2000e-3(a) (stating that "[i]t shall be an unlawful employment practice for *an employer* to discriminate against any of [its] employees . . .") (emphasis added).

Furthermore, although Sodexo's termination of its food service workers was related to Saint Leo's termination of the contract, Plaintiffs have not put forth any evidence whatsoever to

show a casual connection between the *Sodexo* Lawsuit (their protected activity) and Saint Leo's termination of its contract (the only action by Saint Leo) with Sodexo. Plaintiffs simply infer that the two must be connected. Plaintiffs, however, cannot establish a casual link simply by inference. *See Novella v. Wal-Mart Stores, Inc.*, 459 F. Supp. 2d 1231, 1235 (M.D. Fla. 2006) (rejecting employee's argument that the casual connection between the protected activity and the adverse action was "a reasonable inference" and nothing more was required).

The argument that Sodexo's decision to terminate Plaintiffs was related to Saint Leo's decision to terminate its contract with Sodexo, *and* that Saint Leo's decision to terminate its contract was related to Plaintiffs' participation in the *Sodexo* Lawsuit is too tenuous to satisfy the causal link element of the prima facie case. *See Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950-51 (11th Cir. 2000) (affirming summary judgment against employee's retaliation claim because the casual chain "took too long to develop and [was] too indirect"). Again, nothing in the record shows that Sodexo was forced to terminate Plaintiffs when the Saint Leo-Sodexo contract ended. Presumably, Sodexo could have continued to employ Plaintiffs at another location. Plaintiffs cannot establish a causal link between their termination and their participation in the *Sodexo* Lawsuit, and as a result, their retaliation claim must fail.

### C. Plaintiffs Cannot Establish Pretext.

Next, Saint Leo argues that, even if Plaintiffs could establish a prima facie case of retaliation, their claims still must fail because Saint Leo has proffered legitimate, non-retaliatory reasons for terminating its contract with Sodexo, which Plaintiffs have failed to show were pretextual. If a plaintiff is able to make a prima facie case, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment

15

action." *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999) (quotations omitted). The defendant's burden of production is "exceedingly light." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). "As long as the evidence could allow a rational fact finder to conclude that the termination was not based on a discriminatory motive, the court must accept the employer's explanation." *Ferrell v. Masland Carpets, Inc.*, 97 F. Supp. 2d 1114, 1125 (S.D. Ala. 2000) (quotations omitted).

Here, Saint Leo has proffered three separate reasons for terminating its contract with Sodexo: (1) Saint Leo wanted Vogel to remain on the campus as Director of Dining Services; (2) Saint Leo could save hundreds of thousands of dollars by operating its own food service program; and (3) Saint Leo did not believe that Sodexo properly communicated with it as Sodexo's client regarding what was going on in the *Sodexo* Lawsuit. These reasons are more than sufficient to satisfy Saint Leo's burden of production.

Once a defendant meets this burden, to survive summary judgment, the plaintiff must show that each of the defendant's proffered reasons for taking the adverse employment action were actually a pretext for retaliation. *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (en banc). "[A plaintiff] may demonstrate that [the employer's] reasons were pretextual by revealing such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the employer's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1348-49 (11th Cir. 2007) (citations omitted). A plaintiff's mere subjective beliefs, speculation, or conclusory assertions of pretext are insufficient to meet this test. *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs.*, 47 F.3d 1068, 1073-74 (11th Cir. 1995).

Here, Plaintiffs have failed to put forth any evidence that would create an issue of fact as to whether Saint Leo's three legitimate business reasons for terminating its contract with Sodexo were pretextual. Plaintiffs argue that the $400,000 in cost savings could not have been a reason for Saint Leo's decision to terminate its contract with Sodexo and must have been pretextual because Saint Leo did not learn about the per meal cost savings until after the decision was made. However, the record reveals that, although Saint Leo was unaware of the exact per meal cost it would save by bringing the food operations in-house, Saint Leo *estimated* it would save $400,000. Whether that estimate proved accurate is wholly irrelevant; rather, the relevant inquiry is whether this reason is unworthy of credence. A plaintiff cannot establish pretext merely by establishing that a defendant's employment decision was mistaken, but instead must show that the decision was motivated by discriminatory animus. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Plaintiffs have not done so.

Moreover, Plaintiffs have presented no evidence or argument whatsoever that Saint Leo's other two proffered reasons (the desire to keep Vogel and the dissatisfaction with Sodexo) were unworthy of credence. Plaintiffs argue that the fact that the managerial food service workers, such as Vogel, were retained, while the non-managerial workers, such as Plaintiffs, were terminated, is evidence of pretext. This argument, however, fails because it misstates the record. The undisputed record shows that Sodexo terminated *all* of its food service workers once the Sodexo-Saint Leo contract ended. Saint Leo then decided to hire Vogel to work in-house. Saint Leo's decisions regarding whether to hire each of the Plaintiffs to work in-house are not properly before this Court, and cannot be used to show that Saint Leo's decision to terminate the contract was pretextual. Therefore, because Plaintiffs failed to show that each of Saint Leo's legitimate

17

business reasons were pretextual, their retaliation claim must fail.

### D. Plaintiff Butler's FCRA and Title VII Claims are Barred.

Finally, Plaintiff Butler's retaliation claim under the FCRA and Title VII is barred for the additional reason that she never filed a charge of discrimination. Pursuant to Florida Statute Section 760.11(1), in order to state a case of action under the FCRA, a plaintiff must first file a charge of discrimination with the Florida Commission on Human Relations within 365 days of the alleged violation. Likewise, pursuant to 42 U.S.C. § 2000e-5(e)(1) and 2000e-5(f)(1), in order to state a cause of action under Title VII, a plaintiff must first file a charge of discrimination with the Equal Employment Opportunity Community Commission ("EEOC") within 300 days of the alleged unlawful employment practice and then may only file a lawsuit within 90 days after receiving a Notice of Right to Sue from the EEOC. It is undisputed that Plaintiff Butler did not file a charge of discrimination, and thus, did not satisfy the jurisdictional prerequisites to maintaining her claim under the FCRA or Title VII.

## IV. Conclusion

In conclusion, viewing the entirety of the record in the light most favorable to Plaintiffs, there are no genuine issues of material fact as to Plaintiffs' retaliatory termination claim. Accordingly, Saint Leo's Motion for Summary Judgment (Dkt. 64) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendant Saint Leo University, Incorporated, and against Plaintiffs Melissa Wigfall, Connie Daniels, Genethel Danielle Pye, Anthony Mills, Malisa Butler, Virginia Larry, and Melissa Worley, and to close this case. The pretrial conference previously scheduled in this case for April 12, 2012 is hereby cancelled, and this case is removed from the Court's May 2012 trial calendar.

**DONE AND ORDERED** at Tampa, Florida, this 6th day of March, 2012.

Copies to:
Counsel of Record

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge